SNYDER v ADVANTAGE HEALTH PHYSICIANS

Docket No. 274327. Submitted February 13, 2008, at Lansing. Decided November 18, 2008, at 9:00 a.m.

Margaret and Thomas Snyder served Chad Williams, M.D., Advantage Health Physicians, and others with notices of intent to bring a medical-malpractice action against the notice recipients. The Snyders then filed in the the Kent Circuit Court a medical-malpractice complaint that did not include Williams as a defendant. More than 91 days after the defendants filed their answer, they moved for leave to file a notice of nonparty fault asserting fault by Williams. The court, George S. Buth, J., granted the motion. The plaintiffs appealed by leave granted.

The Court of Appeals *held*:

MCR 2.112(K)(3)(c) required that a notice of nonparty fault be filed within 91 days after a defendant files its first responsive pleading, but permits a court to allow a later filing of the notice on motion by the defendant and upon a showing that the facts on which the notice is based were not and could not with reasonable diligence have been known to the moving party earlier, provided that the late filing of the notice does not result in unfair prejudice to the opposing party. Here—where the defendant's attorney had also counseled Williams about the same matter, the notices of intent suggested malpractice by Williams, but the defendants failed to undertake some direct and independent action to investigate a potential defense based on Williams's possible malpractice —the defendants failed to establish that the facts underlying their notice of nonparty fault by Williams could not, with reasonable diligence, have been known earlier.

Reversed and remanded for further proceedings.

*Grysen & Associates* (by *B. Elliot Grysen*) for the plaintiffs.

*Smith Haughey Rice & Roegge* (by *Jon D. Vander Ploeg* and *Carol D. Carlson*) for the defendants.

Before: WILDER, P.J., SAAD, C.J., and SMOLENSKI, J.

PER CURIAM. Plaintiff[1] appeals by leave granted the lower court's order granting defendants leave to file a notice of nonparty fault against Dr. Chad Williams. We reverse and remand.

I

Before August 2002, plaintiff was active and in good health, and a patient of Caledonia Family Practice and of Dr. Jennifer H. Battiste. In August 2002, plaintiff went to the Caledonia Family Practice with complaints of numbness in her toes and fingers, and was examined at that time by Dr. Battiste. In September 2002, lumbar spine x-rays taken at Saint Mary's Mercy Medical Center (St. Mary's) revealed mild disc space narrowing in the lower lumbar spine. A magnetic resonance imaging (MRI) of plaintiff's lumbar spine conducted on the same day at St. Mary's revealed a mass in plaintiff's uterus. In light of this result, Dr. Battiste advised plaintiff to have an ultrasound. In early October 2002, Dr. Williams, a radiologist, performed, at St. Mary's, the ultrasound recommended by Dr. Battiste. A few days later, Dr. Williams authored a report that interpreted the ultrasound study to find a lipoleiomyoma (a common benign, smooth muscle tumor in the uterus). Williams's report interpreted the mass to represent a 7.2 cm lipoleiomyoma.

A copy of Dr. Williams's ultrasound report was sent to Dr. Battiste, who informed plaintiff that the mass was benign. Dr. Battiste did not recommend any additional workup or a consultation with a gynecologist.

Plaintiff suffered heavy postmenopausal bleeding in May and July 2003. At the end of July 2003, plaintiff's

---

[1] "Plaintiff" refers to the principal plaintiff, Margaret Snyder.

gynecologist diagnosed the mass in plaintiff's uterus as a liposarcoma (a form of cancer). In July 2003, plaintiff underwent extensive surgery to remove her uterus, ovaries, fallopian tubes, and cervix. Unfortunately, the cancer had already spread, and the operating physicians were unable to remove all of it. According to plaintiffs, had plaintiff's uterine mass been timely diagnosed as a liposarcoma, and had surgery to remove it been performed in October 2002 instead of July 2003, plaintiff's chances of survival would have been greater than 90 percent, but with the delayed diagnosis her chances of survival dropped to less than 15 percent.

In July 2004, plaintiffs, pursuant to MCL 600.2912b, sent a notice of intent to sue to St. Mary's and its employees and providers, Dr. Williams and any employing professional corporation, Dr. Battiste and any employing professional corporation, Caledonia Family Practice and its employees and providers, and Advantage Health Physicians and its employees and providers. On November 5, 2004, counsel for potential defendant St. Mary's acknowledged receipt of the notice of intent to sue St. Mary's and informed plaintiffs' counsel that she represented St. Mary's.[2] Counsel for St. Mary's then spoke with plaintiffs' attorney over the telephone, in which conversation plaintiffs' counsel informed St. Mary's counsel that plaintiffs would not be suing St. Mary's or Dr. Williams. Upon learning this, counsel for St. Mary's immediately stopped working on the case. None of the potential defendants provided a written response to the initial notice of intent.

On November 15, 2004, after reviewing the available medical reports and records and consulting with their experts, plaintiffs filed an amended notice of intent to

[2] Counsel for St. Mary's did not, at that time, specify that it was also representing Dr. Williams.

sue (NOI). This amended NOI omitted Dr. Williams and St. Mary's as potential defendants. It is unclear from the record which potential defendants, if any, responded to this amended NOI.

On February 15, 2005, plaintiffs filed a complaint naming Advantage Health Physicians, Caledonia Family Practice, and Dr. Battiste as defendants. The complaint did not name St. Mary's or Dr. Williams as defendants. Counsel who had previously represented potential defendant St. Mary's was retained to represent the named defendants, and filed an answer on their behalf on March 18, 2005. Defendants did not file a notice of nonparty at fault within "91 days after the party files its first responsive pleading." MCR 2.112(K)(3)(c). However, after discovery, during which the records of Dr. Donald Heggen, plaintiff's obstetrician/gynecologist, first became available in the litigation, defendants, on December 13, 2005, filed a motion to permit the delayed filing of a notice of nonparty fault naming Dr. Heggen. Defendants asserted "that the facts on which the notice is based were not and could not with reasonable diligence have been known to the moving party earlier." Plaintiff did not oppose this motion. On February 6, 2006, the trial court entered an order granting defendants' motion, and on February 9, 2006, defendants filed a notice of nonparty fault against Dr. Heggen.

In April 2006, a cancerous mass was discovered in plaintiff's lung.

On August 24, 2006, Dr. Williams was deposed. According to defense counsel, Dr. Williams was not represented by counsel at his deposition. The following exchange took place between plaintiff's counsel and Dr. Williams:

> *Q.* So from the radiographic appearance on ultrasound and MRI, were you able to say with certainty what was causing this mass?
>
> *A.* No, not with a hundred percent certainty.

* * *

*Q.* Were you able to reach the conclusion that this mass was benign or malignant to a hundred percent degree or certainty by just the radiographic appearance?

*A.* A lipoleiomyoma is benign, therefore, my impression was that this was a benign mass.

*Q.* And my question was, were you able to reach that conclusion to a hundred percent degree of certainty without tissue diagnosis?

* * *

*A.* Obviously not in this case, because I was wrong.

* * *

*Q.* We took Dr. Battiste's deposition, and she did have some recollection of talking to you. Have you reviewed that?

*A.* No.

*Q.* I'll read it to you and then hand it to you. She said at page 41, I asked her—I was taking the deposition—"and do you recall what the conversation was about?" And her answer was, "Just his definition of a lipoleiomyoma, to make sure that I was giving the correct information to her." And I said, "Sure, and what was his definition of a lipoleiomyoma?" His answer was that it was a fibroid, and the question was, "Okay"—from me against [sic]—"Did you have any conversations with the radiologist about whether he believed it was malignant or benign." "Do you know if lipoleiomyomas are benign?" She answered, "I don't know that." "Do you know what percentage of lipoleiomyomas are benign?" And her answer was, "No."

Do you know, based upon your training, as to what percentage of lipoleiomyomas are benign?

*A.* 100 percent are benign.

*Q.* All right. If that's true, and I think you told me that earlier, how is it that this one turned out to be malignant?

\* \* \*

*A.* This was not a lipoleiomyoma.

When Dr. Jonathan M. Alexander, the plaintiff's radiology expert, was deposed on August 25, 2006, he testified as follows, criticizing the radiological interpretation of the plaintiff's pelvic ultrasound:

*Q.* [By plaintiff's counsel] Can you tell us how you believe a reasonable and prudent radiologist interpreting this ultrasound would—what would be the interpretation —the official interpretation given?

\* \* \*

*A.* Would be something like irregularly—irregular, incompletely seen hyperechoic uterine mass. Not typical of leiomyoma. And I would suggest a follow-up MRI—full pelvic MRI for further assessment.

*Q.* Can the diagnosis of what type of mass this is be made by the radiologist?

\* \* \*

*A.* Ultimately, tissue typing can never be made. We can—we can come close on a full MRI using fat saturation and so forth, but ultimately, no.

\* \* \*

*Q.* To the best of your recollection, in the conversations that you had with me about these films in 2004, did you express any criticisms of either of the radiologists who read these films?

*A.* I believe that I felt that they hadn't completely investigated the imaging of this lesion—

*Q.* Okay.

*A.* —and didn't request such.

*Q.* Did you reach an opinion as to whether that violated any standards of radiographic interpretation to suggest exactly what tests should be done?

\* \* \*

*A.* Yes. As I said, I think this was—should not have been left as done.

On cross-examination, Alexander indicated that had the radiologists who read the MRI been named as defendants in this action, he would have been comfortable opining that the radiologist's interpretive work fell below the requisite standard of care.

After receiving the transcript of Dr. Williams's deposition, defendants, on October 17, 2006, and pursuant to MCR 2.112(K), moved in the trial court for leave to file a notice of nonparty fault against Dr. Williams. Defendants argued that the delay in seeking permission to file such a notice was not caused by dilatory conduct but by a surprising revelation during discovery that Dr. Williams may be at fault.

Plaintiffs opposed the motion, arguing that because the notice of intent included Williams, and because counsel represented St. Mary's, Dr. Williams's employer, when the notice of intent was mailed, there was no reason why defendants could not have discovered Dr. Williams's potential liability in the two years since the notice of intent was sent. Plaintiffs argued that defendants took no action to investigate whether Dr. Williams was negligent in interpreting the ultrasound.

A hearing on defendants' motion to file a delayed notice of nonparty fault was held on October 20, 2006. The trial court agreed with defendants, and granted the motion.

On October 31, 2006, plaintiffs filed a second amended NOI. This NOI was addressed, among others,

to St. Mary's and its employees, Dr. Williams, and any professional corporation employing Dr. Williams. It is unclear from the record whether any defendants responded to the second amended NOI.

On November 14, 2006, the trial court entered an order granting defendants' motion for leave to file a delayed notice of nonparty fault. On November 15, 2006, plaintiffs filed an application for leave to appeal in this Court. On December 7, 2006, this Court granted plaintiffs' application for leave to appeal.

On December 26, 2006, plaintiffs filed a first amended complaint. This pleading included Dr. Williams as a party defendant. On February 15, 2007, Dr. Williams, through an attorney different from the attorney for the four defendants named in the original complaint, filed an answer to the first amended complaint.

II

We review de novo the interpretation and application of a court rule. *Kloian v Domino's Pizza LLC*, 273 Mich App 449, 456; 733 NW2d 766 (2006).

III

In a tort action seeking damages for personal injury, the trier of fact must determine the fault of each person or persons who contributed to the injury, regardless of whether such persons were or could have been named as parties. MCL 600.2957(1); MCL 600.6304(1)(b). But the trier of fact may not assess the fault of a nonparty, unless the defendant has given timely notice of the nonparty fault claim. MCR 2.112(K)(2); *Rinke v Potrzebowski*, 254 Mich App 411, 415; 657 NW2d 169 (2002).

Generally, a party must file a notice of nonparty fault within 91 days after the party files its first responsive

pleading. MCR 2.112(K)(3)(c). But *on a showing that the facts on which the notice is based were not and could not with reasonable diligence have been known to the moving party earlier, provided that the late filing of the notice does not result in unfair prejudice to the opposing party,*" the trial court "shall allow a later filing of the notice . . . ." *Id.* (emphasis added).

Here, it is undisputed that defense counsel failed to comply with the 91-day filing period for a notice of nonparty fault. In fact, defendants moved to file a notice of nonparty fault against Williams long after (more than 550 days after) they filed their answer (their first responsive pleading). The questions presented are (1) whether the facts on which the late notice was based could have been known to defense counsel earlier, through the exercise of reasonable diligence, and (2) if not, whether the late filing would result in unfair prejudice to plaintiff.

The rules of construction of a court rule are as follows:

> Michigan courts construe court rules in the same way that they construe statutes. *Marketos v American Employers Ins Co,* 465 Mich 407, 413; 633 NW2d 371 (2001). "Well-established principles guide this Court's statutory [or court rule] construction efforts. We begin our analysis by consulting the specific . . . language at issue." *Bloomfield Charter Twp v Oakland Co Clerk,* 253 Mich App 1, 10; 654 NW2d 610 (2002). This Court gives effect to the rule maker's intent as expressed in the court rule's terms, giving the words of the rule their plain and ordinary meaning. See *Willett v Waterford Charter Twp,* 271 Mich App 38, 48, 718 NW2d 386 (2006). If the language poses no ambiguity, this Court need not look outside the rule or construe it, but need only enforce the rule as written. See *Ayar v Foodland Distributors,* 472 Mich 713, 716; 698 NW2d 875 (2005). This Court does not interpret a court rule in a way that renders any language surplusage. See

*Pohutski v City of Allen Park,* 465 Mich 675, 684; 641 NW2d 219 (2002). [*Kloian, supra* at 458.]

"Reasonable diligence" is not defined in the court rule. We may consult a legal dictionary to define an undefined term that has a specific legal meaning. *Vodvarka v Grasmeyer,* 259 Mich App 499, 510; 675 NW2d 847 (2003). Black's Law Dictionary (8th ed) defines "reasonable diligence" as "[a] fair degree of diligence expected from someone of ordinary prudence under circumstances like those at issue."

Few of our cases address the circumstances under which a late notice of nonparty fault may be filed. In *Bint v Doe,* 274 Mich App 232; 732 NW2d 156 (2007), a tractor-trailer, which displayed the letters TNT in orange on its wind deflector, struck the plaintiff's vehicle. After the accident, a man wearing a shirt inscribed with the name "Roger" approached the plaintiff. The plaintiff assumed that "Roger" was the driver of the tractor-trailer. The plaintiff also assumed that USF Holland owned the tractor-trailer because it used the orange TNT logo she saw on the wind deflector. In light of these assumptions, the plaintiff sued USF Holland, the driver ("Roger Doe"), and Citizens Insurance. The plaintiff sued Citizens Insurance for unidentified motorist benefits because she believed that she might never identify the owner of the tractor-trailer. The plaintiff subsequently amended her complaint to add other defendants whom she learned used the TNT logo.[3]

Subsequently, Roger Brock and Con-Way Transportation Services, Inc. (Con-Way), were identified as the driver and owner of the tractor-trailer, respectively, and

---

[3] See *Bint v Doe,* unpublished opinion per curiam of the Court of Appeals, issued February 12, 2004 (Docket Nos. 242252, 242253); *Bint v Doe,* unpublished opinion per curiam of the Court of Appeals, issued August 7, 2001 (Docket No. 220309).

USF Holland filed a notice of nonparty fault against them. Brock and Con-Way moved for summary disposition on the ground that the notice of nonparty fault was not timely. The trial court denied the motion, and this Court affirmed. *Bint, supra* at 236. We explained:

> MCR 2.112(K)(3)(c) provides that a late notice may be filed "on a showing that the facts on which the notice is based were not and could not with reasonable diligence have been known to the moving party earlier, provided that the late filing of the notice does not result in unfair prejudice to the opposing party." USF Holland was among eight defendants in the original complaint. Although USF Holland knew or should have known that it was not involved in the accident, it initially had no reason to suspect that the driver was not already a party to the lawsuit. When USF Holland learned in May 2002 of Brock's alleged involvement, it had a pending summary disposition motion, which was granted. Because plaintiffs appealed that order, the case was not active in the trial court again until October 25, 2004. Therefore, USF Holland had a reasonable explanation for not seeking permission to file a notice of nonparty fault until February 18, 2005. Further, plaintiffs, the opposing parties, were not prejudiced by the late filing of the notice. Therefore, USF Holland complied with the notice requirement. [*Id.*]

This Court concluded that USF Holland could not with reasonable diligence have known of the involvement of Brock and Con-Way before May 2002, because "it had no reason to suspect that the driver was not already a party to the lawsuit." *Id.*

In *Salter v Patton*, 261 Mich App 559; 682 NW2d 537 (2004), the plaintiffs sued six defendants. In April 2002, four of the defendants were dismissed from the lawsuit after they settled with the plaintiffs. On April 8, 2002, the remaining two defendants moved the trial court for leave to file a notice of nonparty fault against the four defendants who had settled. The trial court denied the

motion. On appeal, the Court reversed. *Id.* at 567. Regarding the "reasonable diligence" requirement, the Court wrote:

> Defendants were undoubtedly late in filing the motion because they did so well over ninety-one days from the time they filed their first responsive pleading. However, as defendants point out, all the parties named in their notice were parties to the action up to the time they settled, and discovery was comprehensive. Furthermore, after the settlement, defendants almost immediately filed their motion to file notice of nonparty fault. Indeed, the court rule requires the trial court to grant the motion in this case because defendants could not have known about the need to file notice until after the settlement. [*Id.*]

Contrary to defendant's argument on appeal, the present case is distinguishable from *Salter*. In *Salter*, it was undisputed that the notice of nonparty fault could not have been filed within 91 days of when the defendants filed their first responsive pleading or at any time before the settlement. Before the settlement, the four parties, who were eventually named as nonparties-at-fault, were actually parties in the case. Notice of nonparty fault was unnecessary until settlement. In the present case, however, there is a dispute about whether defendants could have discovered before Williams's deposition the facts that led to their motion for leave to file a notice of nonparty fault against Williams. The issue in the present case is whether defendants acted with reasonable diligence, despite not conducting any investigation into the specific role Williams played in the misdiagnosis of plaintiff's uterine mass.

Defendants contend that their reliance on the assertion by plaintiff's counsel, made during the notice of intent period, that plaintiff would not sue Dr. Williams or St. Mary's Mercy Medical Center because plaintiff was unable to discover any evidence to support claims

against them constitutes the reasonable diligence required by MCR 2.112(K)(3)(c). We cannot agree. The notice of intent stated that Dr. Williams interpreted the findings of the ultrasound to represent a lipoleiomyoma (a benign mass). The notice of intent also stated that a copy of the ultrasound report, which contained the incorrect interpretation, was sent to Dr. Battiste. In addition, the notice of intent stated that in July 2003 plaintiff's uterine mass was discovered to be a sarcoma (a malignant mass). Thus, the notice of intent suggested that Dr. Williams misinterpreted the findings of the ultrasound, and that his misinterpretation was passed on to Dr. Battiste. The complaint further suggested the possibility that Dr. Williams misinterpreted the findings of the ultrasound, when the complaint asserted that despite the statement in the ultrasound report that the uterine mass was benign, the mass was in fact malignant.

If Dr. Williams's interpretation of the findings of the ultrasound fell below the standard of care for a radiologist, then defendants had a potentially viable defense or partial defense to the claims against them, i.e., that Dr. Williams misdiagnosed the mass and Dr. Battiste merely relied on the misdiagnosis. The exercise of reasonable diligence would have involved undertaking some direct and independent action to investigate this potential defense, yet, despite having "reason to suspect" that this potential defense existed, defendants undertook no independent investigation. *Bint, supra* at 236.

Accordingly, the trial court erroneously concluded that defendants exercised reasonable diligence. We reverse the trial court's order, because defendants failed to establish that the facts underlying their notice of nonparty fault against Dr. Williams could not, with

reasonable diligence, have been known earlier. Because we hold that defendants failed to exercise reasonable diligence, the issue whether unfair prejudice would result to plaintiffs, from allowing the late filing of the nonparty fault notice, is moot. *The Healing Place at North Oakland Med Ctr v Allstate Ins Co*, 277 Mich App 51, 61; 744 NW2d 174 (2007).

IV

The trial court erred by ruling that defendant's conduct satisfied the "reasonable diligence" requirement of MCR 2.112(K)(3)(c).

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.