*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DBD KAZOO, LLC,

     Plaintiff-Appellant,

v

WESTERN MICHIGAN, LLC, FV NORTH, LLC, 1234EN, LLC, ENCORE2 PROPERTY INVESTMENT, LLC, ENCORE PROPERTY INVESTMENT, LLC, MARIAN KENNEDY, UNIVERSITY ACQUISITIONS, LLC, UNIVERSITY OPERATIONS, LLC, GROSS & COHEN REAL ESTATE INVESTORS LTD, MICHAEL S. COHEN, ASSET CAMPUS HOUSING, INC, ASSET CAMPUS USA, LLC,

     Defendants-Appellees,

and

STEVEN J. GROSS,

     Defendant.

UNPUBLISHED
April 23, 2020

No. 345707
Kalamazoo Circuit Court
LC No. 17-000259-CB

Before: MARKEY, P.J., and JANSEN and BOONSTRA, JJ.

PER CURIAM.

-1-

Plaintiff appeals by leave granted[1] the trial court's order denying its motion to strike the notices of nonparty at fault filed by defendants FV North, LLC; Western Michigan, LLC; 1234EN, LLC; Encore Property Investment, LLC; Marian Kennedy;[2] and Encore 2 Property Investment, LLC (collectively, "Encore Defendants") and defendants University Acquisitions, LLC; University Operations, LLC; Gross & Cohen Real Estate Investors, Ltd.; and Michael Cohen (collectively, "University Defendants").[3]  We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In January 2016, two corporate entities, SQ Kalamazoo Owner, LLC and Student Quarters, LLC, filed suit against several of the defendants named in this case: Western Michigan, LLC; FV North, LLC; 1234EN, LLC; Asset Campus Housing, Inc; and Asset Campus USA, LLC.  In their complaint, SQ Kalamazoo Owner, LLC and Student Quarters, LLC asserted claims for breach of contract, innocent or negligent misrepresentation, and civil conspiracy.  The complaint described how Student Quarters, LLC had negotiated the purchase of "Thirteen24," a 641-bed student housing community located near Western Michigan University in Kalamazoo, Michigan, and had subsequently assigned its interest regarding the purchase to SQ Kalamazoo Owner, LLC, its affiliated entity.  It also described at length how SQ Kalamazoo Owner, LLC began to suspect that the named defendants "had not been forthcoming in their representations, warranties and disclosures regarding Thirteen24," resulting in significant financial loss.  Defendants were all involved in the listing, marketing, and sale of Thirteen24.  Two years later, on February 2, 2018, the trial court granted SQ Kalamazoo Owner, LLC's and Student Quarters, LLC's motion to dismiss their own complaint with prejudice.

On June 23, 2017, plaintiff filed suit against defendants, alleging that its predecessor-in-interest[4] had agreed to loan SQ Kalamazoo Owner, LLC approximately $19 million dollars for the purchase of Thirteen24, that SQ Kalamazoo Owner, LLC was unable to make its payments on the promissory note, and that plaintiff had been assigned their rights and interest in the promissory notes and related loan documents at a foreclosure sale.  In other words, plaintiff alleged that it was

---

[1] See *DBD Kazoo, LLC v Western Mich, LLC*, unpublished per curiam order of the Court of Appeals, entered February 20, 2019 (Docket No. 345707) (granting leave to appeal and staying trial court proceedings).

[2] Plaintiff's summons to Kennedy expired, so plaintiff sued her separately.  On December 15, 2017, the trial court entered an order consolidating the two cases.

[3] The remaining two defendants, Asset Campus Housing, Inc and Asset Campus USA, LLC, did not file notices of nonparty at fault, but informed the trial court that they intended to rely on the notices filed by the University Defendants.  They are only peripherally involved in the issues raised in this appeal.  Unless otherwise specified, our use of the term "defendants" in this opinion describes the University Defendants and the Encore Defendants collectively.

[4] Plaintiff does not identify its predecessor-in-interest.  During the summary disposition hearing, the parties agreed that the original lender was Fortress Credit Co, LLC.  The mortgage had been assigned to several different parties in the interim.

the assignee of the plaintiffs in the previous litigation. Plaintiff asserted claims for fraud, misrepresentation, and civil conspiracy relating to the Thirteen24 acquisition. Plaintiff's complaint was similar in many respects to the complaint filed by SQ Kalamazoo Owner, LLC, and Student Quarters, LLC in 2016.

On August 14, 2017, the Encore Defendants answered plaintiff's complaint.[5] On September 25, 2017, the University Defendants answered plaintiff's complaint.

On March 13, 2018, the University Defendants filed a motion for summary disposition arguing that plaintiff had failed to state a claim on which relief could be granted, or, in the alternative, that plaintiff did not plead its fraud claims with sufficient particularity. Plaintiff argued that it had adequately pleaded its claims, or in the alternative that it should be allowed amend its complaint. The trial court denied the summary disposition motion and granted plaintiff's request for leave to amend "with the understanding that the fact the exact same case, hopefully more artfully described will be coming down the pike within a relatively short period of time." The trial court stated that an amendment was necessary to "sharpen the focus" of the dispute, and that the "bulk of this case" had already been litigated in the earlier lawsuit. The trial court added the "caveat or admonition that Plaintiffs need to provide [an] amended complaint to specify exactly what areas of claims they believe they have based upon their further investigation" and that "a complaint that simply mirrors the initial [January 7, 2016 complaint in the previous case] is not sufficient." The trial court entered an order requiring DBD Kazoo to file an amended complaint "setting forth its fraud and negligent misrepresentation claims with particularity" and that the amended complaint "must identify, with particularity, the alleged fraud, inaccuracy, mistake in fact and/or misrepresentation contained in any document made or produced by each defendant which it relied upon as a basis for making the subject April 7, 2015 loan, including any communication, financial statement, operating statement, or lease."

On June 1, 2018, plaintiff filed its first amended complaint. The Encore Defendants answered on June 11, 2018 and the University Defendants answered on June 12, 2018. On July 20, 2018, the University Defendants filed a notice under MCR 2.112(K) naming SQ Kalamazoo Owner, LLC and Student Quarters, LLC—the plaintiffs in the earlier litigation and the borrowers/purchasers in the underlying real estate transaction—as nonparties at fault. The University Defendants stated in their notice that "[t]he above-named entities were responsible for providing information to Plaintiff and/or Plaintiff's predecessors-in-interest that Plaintiff now alleges was purportedly inaccurate, misleading, and/or deceptive." On July 23, 2018, the Encore Defendants also filed a notice of non-party at fault naming SQ Kalamazoo Owner, LLC and Student Quarters, LLC, and stating that these entities were "the purchaser of the property which failed, refused or neglected to provide all of the documentation they had available from their due diligence process to the original lender Fortress, who ultimately assigned its interest to DBD Kazoo, LLC."

On July 27, 2018, plaintiff moved to strike all of the notices of nonparty at fault as untimely, arguing that because MCR 2.112(K)(3)(c) provides that a notice of nonparty at fault "must be filed

---

[5] Kennedy's Answer was filed on November 29, 2017.

within 91 days after the party files its first responsive pleading," all of the notices of nonparty at fault were untimely because defendants had filed their respective answers to plaintiff's original complaint in August and September (or, in Kennedy's case, in November) of 2017. In response, the University Defendants and Encore Defendants argued that their notices were timely because they were filed within 91 days of their answer to the amended complaint. In the alternative, the University Defendants requested the trial court's leave to file the notice as permitted by MCR 2.112(K)(c)(3).

On August 6, 2018, the trial court held oral argument on plaintiff's motion and ruled from the bench. The court first recognized that the parties were all familiar with the underlying facts from the earlier litigation and therefore knew the relevant parties and the claims at issue. After discussing the previous litigation, the court determined that defendants should be allowed to name nonparties at fault, stating:

> Ah, clearly, um, this Court is swayed by the argument that a [sic] earlier complaint which does not raise an issue which would subject to a non-party, um, of interpretation should not bar Defendants from raising non-party if a later complaint does in fact raise that—or make that a front—front burner issue. I'm not going to say that that's necessarily the case here, ah, but I think the logic behind that particular approach would say that to the extent that any -- an amended, um, complaint does provide the Defendant with, for lack of a better term, notice to raise the issue.

> The Court believes that Defendants should not be precluded from raising the issue simply by virtue of a hard and fast rule that says, ah, the original complaint and the original answer serve as the, um, as the cutoff with regard to any claim of— of a at [sic]—non-party fault whether the issue was raised at that time or not. Um, the Court is sympathetic to the argument that simply amending the complaint and going forward with, um, a [sic] allowance to any time the complaint is amended, allowing Defendant to raise the issue given [inaudible] further time, ah, that in and of itself may cause additional problems, but I think that a hard and fast rule saying that, ah, this amended co—simply because his complaint was amended, um, and that there was not an original at fault—or, non-party at fault claim filed by Defendant, not that they couldn't in response to the amended complaint, ah, do the non-party at fault within 91 days, um, is likewise not—not appropriate.

> The whole philosophy, I believe, with regard to the 91 days is that once an issue is raised, ah, that it should be addressed early in the litigation process. It should not be something that awaits an 11th hour. Likewise, this Court has to make a determination as to whether a non-party fault claim, um, in some ways, either in the words of . . . all counsel, prejudices the Plaintiff, or in some way, um, indicates a lack of diligence on the part of, um, the Defendants.

> As to the diligence matter . . . the question of whether there is some need to, um, bar them from raising the—the non-party fault issue, ah, I don't believe their lack of diligence, um, is—is in play at this time. I think that they've—they've raised the matter to the knowledge of all the parties, which goes to the second

question of whether there is prejudice, and quite frankly, um, all the parties know all of the cards that are out there. Some of which are not on the table, some are on the floor, but I don't think that anybody is surprised by the position taken by the Defendants relating to, ah, the question of—of the third parties to this case, ah, the purchasers. We'll use that language.

Um, so bottom line, the Court believes that, um, the use of the language of 2.112(K)(3)(c) specifically requires the Court to analyze whether in fact, um, the amended complaint justifies the use of the incurring of the question, or raising of the question of a third party at fault, um, and that if the Court believes such is the case, the Court is going to allow the parties to go forward. Um, it may well be we end up doing this on a case by case basis, but for this case, ah, at this time, this amendment to the complaint, the Court believes that it is appropriate and therefore the Court is going to deny the motion to strike.

The trial court subsequently entered an order memorializing its decision and denied plaintiff's motion for reconsideration. This appeal followed.

## II. STANDARD OF REVIEW

We review de novo as questions of law the interpretation and application of our court rules. *Snyder v Advantage Health Physicians*, 281 Mich App 493, 500; 760 NW2d 834 (2008). We review for an abuse of discretion a trial court's decision on a motion to strike a notice of nonparty at fault. See *Belle Isle Grill Corp v Detroit*, 256 Mich App 463, 469; 666 NW2d 271 (2003).

## III. ANALYSIS

Plaintiff argues that the trial court erred by denying its motion to strike defendants' notices of nonparty at fault on the grounds that they were untimely and that defendants were not entitled to file a late notice under the exception for late filing set forth in MCR 2.112(K)(3)(c). We agree that the notices were untimely, but disagree that the trial court erred by accepting them under the exception for late filing.

In a tort action, the liability of each person is allocated by the trier of fact in direct proportion to the person's percentage of fault. See MCL 600.2957(1). MCR 2.112(K)(2) states that "the trier of fact shall not assess the fault of a nonparty unless notice has been given as provided in this subrule." "[A] failure to give the notice required under the court rule amounts to a procedural waiver of the right to have a nonparty assigned fault" by the trier of fact at trial. *Taylor v Mich Petroleum Techs, Inc*, 307 Mich App 189, 194-200; 859 NW2d 715 (2014); see also *Veltman v Detroit Edison Co*, 261 Mich App 685, 695; 683 NW2d 707 (2004).

MCR 2.112(K)(3) provides the procedure for filing a notice of nonparty at fault, and states in relevant part:

(c) The notice must be filed within 91 days after the party files its first responsive pleading. On motion, the court shall allow a later filing of the notice on a showing that the facts on which the notice is based were not and could not with reasonable

diligence have been known to the moving party earlier, provided that the late filing of the notice does not result in unfair prejudice to the opposing party. [MCR 2.112(K)(3)(c).]

Plaintiff argues that the trial court erred by holding that defendants' notices of nonparty at fault were timely because they were filed within 91 days of the first pleadings filed in response to the *amended*, rather than original, complaint. Reviewing the trial court's oral ruling, we do not believe that the court made such a holding. The trial court's statement, while perhaps not as clear as it could have been, appears to be that while allowing the 91-day time period for filing notices of nonparty at fault to restart every time a complaint is amended "may cause additional problems," a "hard and fast rule" striking all notices filed 91 days after first responsive pleading to the original complaint, regardless of amendment, was also not appropriate. The court then went on to discuss the issues of defendants' diligence and unfair prejudice to plaintiff.

In context, the trial court's holding was that it would allow the late filing of the notices after the 91-day period had expired, as permitted by MCR 2.112(K)(3)(c). However, in the interest of clarity and because defendants have argued that the 91-day period *does* restart when a complaint is amended, we will briefly address that argument.

This Court interprets court rules using the same principles that govern the interpretation of statutes. Our purpose when interpreting court rules is to give effect to the intent of the Michigan Supreme Court. The language of the court rule itself is the best indicator of intent. If the plain and ordinary meaning of a court rule's language is clear, judicial construction is not necessary.

When interpreting a court rule, we must read the rule's provisions reasonably and in context. We should not read court rules in isolation. Generally, this Court affords every word and phrase in a court rule its plain and ordinary meaning. . . . When interpreting a court rule, we must presume that every word has some meaning. Therefore, we must avoid any interpretation that renders any part of the court rule surplusage or nugatory. This Court must give effect to every sentence, phrase, clause, and word in a court rule. If at all possible, this Court should interpret a court rule to avoid inconsistencies. [*In re McCarrick/Lamoreaux (On Remand)*, 307 Mich App 436, 446-447; 861 NW2d 303 (2014) (quotation marks and citations omitted)].

It is a foundational principle of civil procedure that "[t]here is one form of action known as a 'civil action' " and that "[a] civil action is commenced by filing a complaint with a court." MCR 2.101. As our Supreme Court has explained, "[a]n 'action' is '[a] civil or criminal judicial proceeding.' " *Ronnisch Const Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 559; 886 NW2d 113 (2016), quoting *Black's Law Dictionary* (10th ed). A complaint is a "pleading." See MCR 2.110(A)(1). The court rules provide that "[a] party must file and serve *a responsive pleading*" to a complaint. MCR 2.110(B)(1) (emphasis added); *McCracken v Detroit*, 291 Mich App 522, 526; 806 NW2d 337 (2011). MCR 2.110 expressly defines "pleadings" as complaints, cross-claims, counterclaims, third-party complaints, answers, and replies to answers, and further provides that "[n]o other form of pleading is allowed." See MCR 2.110(A). Therefore, the "first responsive pleading" filed by a party is the first pleading filed by a party in response to a complaint,

whether or not that complaint is subsequently amended. In other words, the relevant time period begins to run for each party the first time that party files a responsive pleading in a case; the inquiry concerns the party's own actions, not the status of the opposing party's complaint. To hold otherwise would be to render the word "first" in MCR 2.2112(K)(c)(3) either surplusage or nugatory, or to give the word a meaning other than its plain and ordinary one. *McCarrick/Lamoreaux (On Remand)*, 307 Mich App at 446-447. Merriam-Webster's Collegiate Dictionary defines "first," when used as an adjective, as "preceding all others in time, order, or importance," as in "earliest." *Merriam-Webster's Collegiate Dictionary* (11th ed). "If the language of the court rule is clear and unambiguous, then no further interpretation is required or allowed." *Wilcoxon v Wayne Co Neighborhood Legal Serv*, 252 Mich App 549, 553; 652 NW2d 851 (2002).

Further, in other court rules, our Supreme Court has used the additional language "either as originally filed or as amended" to distinguish between various responsive pleadings, language that is not found in MCR 2.112(K)(3). See, e.g., MCR 2.111(F)(3); see also *Robert A Hansen Family Trust v FGH Indus, LLC*, 279 Mich App 468, 477 n 7; 760 NW2d 526 (2008) (emphasizing that a party may file an affirmative defense by asserting it in the party's responsive pleading either as originally filed or as amended and did not waive the right by failing to plead it in its first responsive pleading). The Court's use of different terms suggests different meanings. See *United States Fidelity Ins & Guaranty Co v Mich Catastrophic Claims Ass'n (On Rehearing)*, 484 Mich 1, 14; 795 NW2d 101 (2009) (discussing canons of statutory interpretation).

We therefore reject defendants' argument that their notices of nonparty at fault were timely filed. However, we disagree with plaintiff's remaining argument that the trial court erred by determining that defendants were entitled to file a late notice under the exception for late filing found in MCR 2.112(K)(3)(c).

The trial court stated that the issue of defendant's diligence was not "in play at this time." In light of the fact that the trial court denied plaintiff's motion to strike, we understand this to mean that defendants acted with reasonable diligence and that they could not have earlier known the facts upon which their notices were based. MCR 2.112(K)(c)(3). Reasonable diligence is "a fair degree of diligence expected from someone of ordinary prudence" under the particular circumstances at issue. *Snyder*, 281 Mich App at 502. Plaintiff's original complaint did allege that defendants had provided false information to plaintiff's assignors, which then provided the information to plaintiff. And this does suggest that defendants had some notice of the possible role these nonparties had in the claims against them. However, the trial court noted that it had previously ordered plaintiff to amend its original complaint so as to clarify the nature of the claims against defendants. Further, the trial court stated at the March 13th hearing that plaintiff needed to provide "[an] amended complaint to specify exactly what areas of claims they [sic] believe they [sic] have based upon their [sic] further investigation" and that "a complaint that simply mirrors the [complaint in the previous case] is not sufficient." The order entered after that hearing directed plaintiff to set forth its claims with particularity. Under these circumstances, it was not unreasonable for defendants to be unsure of what claims and allegations from the original complaint would survive to the amended complaint. We hold that the trial court did not abuse its discretion by holding that defendant's diligence was not at issue. See *Belle Isle Grill Corp*, 256 Mich App at 469.

Additionally, the trial court did not err by holding that plaintiff suffered no undue prejudice. Plaintiff alleged in its original complaint, and carried these allegations through to the amended complaint, that SQ Kalamazoo Owner, LLC and Student Quarters, LLC, its assignors, had provided information to plaintiff. Further, as the trial court noted, the parties to the case had "a pretty good sense of what transactions have occurred." In other words, because it was plaintiff that brought the allegations that its assignors had played a role in conveying false or fraudulent information to it, it could not have been surprised that defendants might have sought to assign fault to those nonparties. See *Lopez v Gen Motors Corp*, 224 Mich 618, 638; 569 NW2d 861 (1997) (holding that the trial court did not abuse its discretion in allowing witness testimony because "the substance of [the witness's] testimony was not a surprise). We hold that the trial court did not abuse its discretion by failing to find undue prejudice to plaintiff. See *Belle Isle Grill Corp*, 256 Mich App at 469. Therefore, the court properly allowed the late filing of defendants' notices of nonparties at fault under MCR 2.112(K)(3)(c).

Affirmed.

/s/ Jane E. Markey
/s/ Kathleen Jansen
/s/ Mark T. Boonstra