A&E PARKING v DETROIT METROPOLITAN
WAYNE COUNTY AIRPORT AUTHORITY

Docket No. 261046. Submitted July 13, 2006, at Detroit. Decided July 25, 2006, at 9:05 a.m.

A&E Parking and other providers of airport shuttle services brought an action in the Wayne Circuit Court against the Detroit Metropolitan Wayne County Airport Authority and Wayne County, alleging that the defendants had violated the Open Meetings Act (OMA), MCL 15.261 *et seq.*, and that the "commercial access fees" charged to the plaintiffs for using airport roads were taxes levied in violation of the Headlee Amendment, Const 1963, art 9, § 31. The trial court, Warfield Moore Jr., J., determined that the defendants had violated the OMA and therefore were not entitled to collect the commercial access fees between the dates of the violation and the next open meeting, and granted summary disposition to the defendants after ruling that the commercial access fees were in fact fees and not taxes. The plaintiffs appealed.

The Court of Appeals *held*:

1. The trial court properly found that the commercial access fees were fees and not taxes. The airport authority has the express statutory power to impose fees, the plaintiffs obtain a benefit from the airport's existence, the amounts charged were derived from a study and were not arbitrary, and the plaintiffs could have avoided paying the fees by doing business elsewhere. Persuasive authority from other jurisdictions supports this determination, while the cases on which the plaintiffs rely for the opposite proposition apply only when distinguishing fees from taxes on real property.

2. The plaintiffs were not entitled to restitution because the defendants did not violate their own regulations or the OMA.

Affirmed.

AVIATION — AIRPORT AUTHORITIES — ACCESS FEES — HEADLEE AMENDMENT.

Commercial access fees charged by an airport authority are properly classified as fees rather than taxes under the Headlee Amendment where the enterprises paying the fees obtain a benefit from the

airport's existence, the amounts charged are not arbitrary, and payment could be avoided by doing business elsewhere (Const 1963, art 9 § 31).

*Cohen, Lerner & Rabinovitz, P.C.* (by *Steven Z. Cohen*), for the plaintiffs.

*Barris, Sott, Denn & Driker, P.L.L.C.* (by *Matthew R. Millikin* and *Morley Witus*), for the defendants.

Before: KELLY, P.J., and MARKEY and METER, JJ.

METER, J. This case primarily deals with whether certain commercial access fees (CAFs) imposed by the Detroit Metropolitan Wayne County Airport Authority (AA) on hotels and parking and limousine companies providing shuttle services at the Detroit Metropolitan Wayne County Airport (airport) constitute taxes levied in violation of the Headlee Amendment, Const 1963, art 9, § 31.[1] We find that the CAFs do not constitute illegal taxes. We also find no merit to appellants' additional arguments, and we therefore affirm the trial court's final order, from which appellants appeal as of right.

Many of the pertinent facts in this case are undisputed. The AA was created under MCL 259.110(2) to operate the airport. The AA is governed by a seven-member board. MCL 259.111(1). The board appointed a chief executive officer (CEO) under MCL 259.111(8). The CEO decided to institute the CAFs, effective March 16, 2003, that would require hotels and parking and

---

[1] On the day set for oral argument, appellants La Quinta Inn, Qwik Park, Four Points by Sheraton, and U.S. Park notified their counsel that they did not wish to pursue this appeal. Counsel moved for an adjournment, which was denied. Counsel then presented oral argument on behalf of the remaining appellants. In the absence of a stipulation to dismiss this appeal, we have addressed all arguments raised by all the appellants in this case.

limousine companies servicing the airport to pay for their use of airport roads to pick up and drop off customers. The fee was due on a monthly basis and, according to defendants, it was roughly equal to a $1 fee for each parking or hotel shuttle trip made by the various companies.

Many of these companies sued defendants, alleging, among other things, that the CAFs constituted taxes that violated the Headlee Amendment and that defendants, in imposing the CAFs, violated the Open Meetings Act (OMA), MCL 15.261 *et seq.* After the parties filed cross-motions for summary disposition, the court ruled that the CAFs were fees, not taxes. The court found, however, that the AA had violated the OMA, and it eventually ordered that the AA could not collect CAFs from September 9, 2004 (the date on which the court initially found an OMA violation) until November 12, 2004.[2]

On appeal, appellants argue that the trial court erred in concluding that the CAFs did not constitute illegal taxes and in granting summary disposition to defendants. We review summary disposition rulings de novo. *Wheeler v Shelby Charter Twp,* 265 Mich App 657, 663; 697 NW2d 180 (2005).[3] Here, the trial court did not indicate the subrule on which it relied in granting summary disposition to defendants. However, the parties cited MCR 2.116(C)(8), (C)(10), and (I)(2). A motion under MCR 2.116(C)(8) is properly granted if the com-

[2] The AA, although it did not agree that the OMA applied in the present situation, nevertheless held an open meeting on November 10, 2004. On November 12, 2004, the court held a hearing that dealt with the open meeting, and the court essentially concluded that the OMA had been satisfied by virtue of the meeting.

[3] Whether a charge is a permissible fee or an illegal tax is a question of law that we also review de novo. *Bolt v City of Lansing,* 459 Mich 152, 158; 587 NW2d 264 (1998).

plaint "fails to state a claim on which relief can be granted, and summary disposition under (C)(10) is proper where there is no genuine issue of material fact and a party is entitled to judgment as a matter of law." *By Lo Oil Co v Dep't of Treasury,* 267 Mich App 19, 25; 703 NW2d 822 (2005). Under MCR 2.116(I)(2), "[i]f it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party."

Appellants contend that the CAFs constitute taxes because the CAFs do not correspond to a regulatory purpose, they are not proportionate to the services obtained by the shuttle providers, and they are essentially *mandatory* charges, because many of the shuttle providers would go out of business if they did not pay the CAFs to gain access to the airport.

Appellants place great reliance on the Supreme Court's opinion in *Bolt v City of Lansing,* 459 Mich 152; 587 NW2d 264 (1998). In *Bolt, supra* at 154-155, the Court considered whether a particular storm water service charge, "imposed on each parcel of real property" located in Lansing, was a "user fee" as opposed to a "tax" levied in violation of the Headlee Amendment, Const 1963, art 9, § 31. The Court stated that it had "articulated three primary criteria to be considered when distinguishing between a fee and a tax." *Id.* at 161. First, a user fee serves "a regulatory purpose rather than a revenue-raising purpose." *Id.* Second, "user fees must be proportionate to the necessary costs of the service." *Id.* at 161-162. Third, a user fee is voluntary, paid only by those who use the service in question. *Id.* at 162. Appellants contend that, under the *Bolt* test, the CAFs constitute taxes.

However, in *Lapeer Co Abstract & Title Co v Lapeer Co Register of Deeds*, 264 Mich App 167, 184-185; 691 NW2d 11 (2004), the Court, in analyzing whether a fee imposed by a county register of deeds for the provision of certain documents constituted a tax, stated:

> [I]t is apparent that the Bolt *test is only designed to distinguish between user fees and taxes on real property* and has no applicability in the present context. In particular, *Bolt* involved an assessment against real property, a financial charge often viewed as a tax. In contrast, the present case involves a charge for the provision of a tangible service, i.e., providing a physical copy of a document. . . . *Put simply, the* Bolt *test is designed to distinguish between assessments on real property that necessarily are either taxes or user fees.* It has no application to a voluntary payment in a transaction, like the purchase of a copy of a record, that does not involve any mandatory assessment. [Emphasis added.]

The present case does not involve a charge imposed on real property. Therefore, under *Lapeer Co*, the *Bolt* test is not dispositive for purposes of this appeal.

The simple fact is that *no* Michigan case law is directly dispositive for purposes of this appeal. However, case law from other states, which admittedly is not binding on this Court, see *People v Brown*, 239 Mich App 735, 740 n 4; 610 NW2d 234 (2000), is highly instructive.

In *Ace Rent-A-Car, Inc v Indianapolis Airport Auth*, 612 NE2d 1104, 1106 (Ind App, 1993), the defendant, a "municipal corporation created . . . for the purpose of operating the Indianapolis International Airport," began charging off-airport car rental companies such as the plaintiff a "fee of '7% of all sales for the rental of automobiles to customers originating at the airport.' " The plaintiff argued, in part, that the fee was improper because it should have been "limited to recoupment of

costs related to repair and maintenance of airport roadways." *Id.* at 1107. The court disagreed, stating:

> In the case before us, the airport's very existence provides a marketplace from which Ace Rent-A-Car derives an economic benefit. Thus, the fees imposed by [the defendant] are not limited to recoupment of costs related to repair and maintenance of airport roadways. Rather, a fee based on a percent of the rental sales of automobiles made to customers originating at the airport represents at least one fair, although imperfect, method of measuring "use." [*Id.* at 1107-1108.]

The plaintiff in *Ace* also argued that the fee represented "an unauthorized tax on income rather than a user fee." *Id.* at 1108. Again, the court disagreed with the plaintiff, stating:

> A tax is compulsory and not optional; it entitles the taxpayer to receive nothing in return, other than the rights of government which are enjoyed by all citizens. On the other hand, a user fee is optional and represents a specific charge for the use of publicly-owned or publicly-provided facilities or services.
>
> In the case before us, Ace Rent-A-Car must pay a fee to [the defendant] only it if uses and benefits from the airport facilities which the fee supports. We disagree with Ace Rent-A-Car that because the fee is based on revenue it is therefore transformed into a tax. [*Id.* (citations omitted).]

In *Jacksonville Port Auth v Alamo Rent-A-Car, Inc*, 600 So 2d 1159, 1160 (Fla App, 1992), the plaintiff, which owned and operated the Jacksonville International Airport, imposed "on nontenant rental car companies [such as the defendant] a six percent gross receipts 'user' or 'privilege' fee for access by their vans to public airport roads and terminal ramps." The defendant argued that the fee constituted an unauthorized tax. *Id.* at 1161. The appeals court disagreed, stating:

The United States Supreme Court distinguished between a tax and a user fee, defining a tax as providing revenue for the general support of the government, while defining a user fee as imposing a specific charge for the use of publicly-owned or publicly-provided facilities or services. *Commonwealth Edison Co. v. Montana*, 453 U.S. 609, 621-622; 101 S. Ct. 2946, 2955; 69 L. Ed. 2d 884, 896-897 (1981).

* * *

[I]n this case the fee is for Alamo's use of all of the [plaintiff's] facilities which benefit Alamo by generating its business. If Alamo wished to avoid the fee, it could obtain its customers from another source. The subject charge is tied exclusively to Alamo's use of the airport facilities to conduct its business. [*Jacksonville Port Auth, supra* at 1162.]

The *Jacksonville Port Auth* court noted that in several cases, courts had held that "an off-airport rent-a-car company benefits from, and therefore 'uses,' the entire airport facility at which it operates." *Id.* at 1162-1163. The court further stated: "[T]he fee is not a general revenue source for the support of a sovereign government. Instead, it is governed by entirely different principles based on Alamo's receipt of a special benefit from the [defendant]—the generation of its customers." *Id.* at 1164.

In *Westrac, Inc v Walker Field, Colorado, Pub Airport Auth*, 812 P2d 714, 715 (Colo App, 1991), the defendant "adopted a resolution requiring all off-airport rental car agencies [such as the plaintiff] to pay defendant ten percent of gross revenues derived from its customers picked up at the airport." The plaintiff argued that the charge constituted an illegal income tax. *Id.* The appeals court disagreed, stating, in part:

Rates charged for use of a public facility owned by a municipal corporation ordinarily are not considered taxes

because their purpose is to defray the expense of operating and improving the facility and because they are imposed only upon those using the service provided. Taxes, on the other hand, are not based on the amount of use, and the proceeds are used to defray general municipal expenses. [*Id.* at 716.]

The court further stated:

The fee in question is not arbitrary. Rather, it is rationally related to the legitimate governmental interest in providing airport facilities. Proceeds from the fee are applied to the costs of operating the airport as a whole. They need not be applied only to costs of maintaining specific portions of the facility utilized by plaintiff. [*Id.* at 718.]

Another instructive case is *Enterprise Leasing Co v Metro Airports Comm*, 250 F3d 1215, 1220-1221 (CA 8, 2001), in which the court stated:

Other states [besides Minnesota] that allocate broad statutory authority for local airport authorities to charge user fees generally find that off-airport rental car companies benefit from the existence of the entire airport and may be charged accordingly. The common denominator in these cases is the idea that airport maintenance and construction is undertaken for airline passengers, who in turn are customers for all rental car companies.

We agree with the reasoning expressed in these out-of-state cases and hold that the CAFs constitute permissible fees and not illegal taxes. The AA is expressly permitted to impose fees under MCL 259.120(1), and, in instituting the CAFs, it has done so. The shuttle service providers obtain a benefit from the very existence of the airport, and, therefore, contrary to appellants' arguments, the AA is entitled to use the revenue obtained from the CAFs to fund the airport as a whole. See *Westrac, supra* at 718. Moreover, the shuttle service providers are not being forced to pay the CAFs but may

choose, if they wish to avoid the fees, to attempt to obtain business elsewhere. See *Jacksonville Port Auth, supra* at 1162. Finally, the CAFs are not arbitrary in their amounts. Instead, the CAFs are based on a study commissioned by the AA and are in accordance with similar fees imposed at other airports. The trial court did not err in concluding that the CAFs constitute permissible fees and not illegal taxes.

Appellants make the alternative argument that the CAFs constitute illegal special assessments. This argument is patently without merit, because special assessments, are, by definition, charges against real property. *Niles Twp v Berrien Co Bd of Comm'rs*, 261 Mich App 308, 324; 683 NW2d 148 (2004). The charges here apply not to real property but to shuttle operators on the basis of the frequency of their use of the airport.

Appellants next argue that the Public Airport Authority Act (PAAA), MCL 259.108 *et seq.*, is unconstitutional because it allegedly provides no standards for how the AA is to determine the amount of various fees it is permitted to impose. Appellants contend that the PAAA thus constitutes an impermissible delegation of legislative power. We decline to address this issue because it was not raised in plaintiffs' complaint.

Appellants next argue that "[t]he [c]ircuit [c]ourt erred in not ordering restitution of charges paid by [p]laintiffs despite the [AA's] violations of the [OMA] and Regulation § 2.17 until November 10, 2004."[4] Appellants contend that the court, in addition to finding a violation of the OMA, also found that the AA had violated one of its own regulations, Regulation 2.17. Regulation 2.17 states, in part:

---

[4] The court did suspend the collection of fees for a short period, but appellants contend that restitution for the fees collected outside this limited period is necessary.

In consideration of the right of access to the Airport to use facilities of the Airport to pick up or convey customers of off-airport commercial enterprises, the owners of such off-airport commercial enterprises shall pay to the County such fees as the Director shall determine. Such fees may be imposed on the gross receipts or revenues derived from or on behalf of customers picked up or conveyed to the Airport and shall be similar for similar business activities.

(a) In determining fees the Director shall take into consideration such factors as:

(1) Service to the traveling public provided by off-airport commercial enterprises,

(2) Frequency and scope of use of the Airport facilities by the off-airport commercial enterprises,

(3) Contribution to the traffic congestion on the Airport roads made by the off-airport commercial enterprises,

(4) The different benefits the various categories of users derive from the Airport,

(5) The degree of business advantages or disadvantages that accrue to the Airport though competitive on-airport service,

(6) Such other factors as may be relevant to the determination.

We initially note that, after our review of the record, it is not clear to us that the court found a violation of Regulation 2.17. Instead, although its ruling is not entirely straightforward, it appears that the court found an OMA violation and a *potential*, but not an *established*, violation of Regulation 2.17. Indeed, the court stated at one point, "How are we really to know that the commission or the Authority, the board or even the director took into consideration all those things that 2.17 says you've got to? How do we know that he did that?"

At any rate, we find that no violation of Regulation 2.17 occurred. The regulation states that fees "*may* be

imposed on the gross receipts or revenues derived from or on behalf of customers picked up or conveyed to the Airport." (Emphasis added.) It does not prohibit the imposition of fees roughly calculated on a per-trip basis. Moreover, the regulation states that factors "such . . . as" those listed shall be taken into consideration; it does not *mandate* the consideration of the listed factors. Nevertheless, the record reflects that the CEO took into consideration many of the listed factors before implementing the CAFs. Significantly, the CEO considered a study performed by an outside consulting company. That study analyzed the airport's roadway-related costs and ways in which the airport could benefit from the implementation of the CAFs. The AA also performed a traffic study to determine which types of shuttle vehicles were using the airport's roads most frequently, and a graduated fee structure based on the study was implemented. The AA also took into serious consideration the fees charged for similar activities at comparable airports. The record makes clear that defendants did not violate Regulation 2.17.

Nor was there a violation of the OMA. The OMA applies to "meetings of a public body." MCL 15.263(1). A "public body" is defined, in part, as "any state or local legislative or governing body . . . ." MCL 15.262(a). While the AA board is a governing body, see MCL 259.111, the CAFs were instituted by the CEO, not by the board. The CEO was authorized to institute the CAFs under Regulation 2.17.[5] As noted in *Herald Co v Bay City*, 463 Mich 111, 131; 614 NW2d 873 (2000), "an individual executive acting in his executive capacity is not a public body for the purposes of the OMA."

---

[5] We note that the board may delegate responsibilities to the CEO under MCL 259.114(5).

Moreover, the board held an open meeting[6] on April 4, 2003, and approved the fees instituted by the CEO before any fees were actually collected. This case simply does not represent a situation like that at issue in *Booth Newspapers, Inc v Univ of Michigan Bd of Regents*, 444 Mich 211; 507 NW2d 422 (1993), a case in which a public body delegated authority "for the express purpose of avoiding the requirements of the OMA." See *Herald, supra* at 134.

Because we find no violation of Regulation 2.17 or of the OMA, appellants' restitution argument is without merit.[7]

Appellants lastly argue that the trial court erred in finding no evidence of a civil conspiracy. We decline to address this issue because it was not raised in plaintiffs' complaint.

Given our resolution of appellants' appeal, we need not address the arguments raised by defendants in their cross-appeal.

Affirmed.

---

[6] Appellants do not contend that this meeting was not "open" but instead focus their argument on the fact that the CEO initially implemented the CAFs.

[7] While the trial court did conclude that an OMA violation had occurred, we note that a trial court's order will not be reversed if the court reached the right result. *Gleason v Dep't of Transportation*, 256 Mich App 1, 3; 662 NW2d 822 (2003). Here, the result the trial court reached was correct in that the order declined to provide the restitution appellants desired.