# STATE OF MICHIGAN

# COURT OF APPEALS

WEATHERSEAL HOME IMPROVEMENTS, INC.,

        Plaintiff-Appellant/Cross-Appellee,

v

RICHARD J. SABLE,

        Defendant-Appellee/Cross-
        Appellant,

and

GRECO TITLE AGENCY, L.L.C., DIANA M. SABLE, ANDY SAKMAR, and SAKMAR & ASSOCIATES, INC.,

        Defendants,

and

DEAN B. WATSON and DOW CHEMICAL EMPLOYEES CREDIT UNION,

        Defendants-Appellees.

UNPUBLISHED
October 16, 2014

No. 313078
Oakland Circuit Court
LC No. 2011-119024-CZ

---

WEATHERSEAL HOME IMPROVEMENTS, INC.,

        Plaintiff-Appellee,

v

RICHARD J. SABLE,

        Defendant-Appellant,

and

GRECO TITLE AGENCY, L.L.C., DEAN B. WATSON, DOW CHEMICAL EMPLOYEES

No. 314079
Oakland Circuit Court
LC No. 2011-119024-CZ

-1-

CREDIT UNION, DIANA M. SABLE, ANDY
SAKMAR, and SAKMAR & ASSOCIATES,
INC.,

          Defendants.

---

Before:  BOONSTRA, P.J., and METER and SERVITTO, JJ.

PER CURIAM.

In Docket Number 313078, plaintiff appeals as of right from the order memorializing the jury's verdict arising from plaintiff's claim of the fraudulent transfer of real estate.  In Docket No. 314079, defendant Richard J. Sable appeals as of right from the order denying his motion for an award of case-evaluation sanctions.  We affirm.

Plaintiff contends that the trial court erred in failing to enter judgment in its favor following a jury determination that Richard Sable had fraudulent intent towards plaintiff at the time of the sale of the property to Dean B. Watson.  Plaintiff contends that the trial court should have awarded plaintiff a judgment on the proceeds obtained or a levy of execution on the property and rendered the transaction to Watson void.

This Court reviews issues of statutory interpretation de novo.  *Radina v Wieland Sales, Inc*, 297 Mich App 369, 373; 824 NW2d 587 (2012).  Similarly, the interpretation of court rules presents questions of law subject to de novo review.  *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008).  Issues pertaining to the priority of liens are also questions of law that are reviewed de novo.  *Graves v American Acceptance Mtg Corp*, 469 Mich 608, 613; 677 NW2d 829 (2004).  Similarly, this Court reviews de novo a trial court's grant or denial of a motion for a directed verdict or judgment notwithstanding the verdict; in reviewing these rulings, this Court views the evidence and all legitimate inferences drawn from the evidence in the light most favorable to the nonmoving party.  *Sniecinski v Blue Cross & Blue Shield of Mich*, 469 Mich 124, 131; 666 NW2d 186 (2003).

Initially, plaintiff argues that it is entitled to payment pursuant to the Michigan judgment-lien act (MJLA), MCL 600.2801 *et seq*.  Plaintiff specifically cites MCL 600.2819, which states:

> There is no right to foreclose a judgment lien created under this chapter.
> At the time the judgment debtor makes a conveyance, as that term is defined in section 35 of 1846 RS 65, MCL 565.35, of, sells under an executory contract, or refinances the interest in real property that is subject to the judgment lien, the judgment debtor shall pay the amount due to the judgment creditor, as determined under section 2807(3), to the judgment creditor.

The language of the MJLA is contrary to plaintiff's position.  "A 'judgment lien' is defined as 'an encumbrance in favor of a judgment *against a judgment debtor's interest in real property*, including, but not limited to, after acquired property.'"  *Thomas v Dutkavich*, 290 Mich App 393, 404; 803 NW2d 352 (2010), quoting MCL 600.2801(c) (emphasis added).  "If a

judgment creditor records a notice of judgment lien with the register of deeds for the county in which the real property is located, the judgment lien *attaches to the judgment debtor's interest* in the real property." *Id.*, citing MCL 600.2803 (emphasis added). Richard Sable, based on his judgment of divorce from Diana Sable, lacked an interest in the property sufficient for plaintiff's execution on the property. This is consistent with MCL 600.2807(3), which provides:

> If property subject to a judgment lien recorded under this chapter is sold or refinanced, *proceeds of the sale or refinancing due to a judgment creditor are limited to the judgment debtor's equity in the property at the time of the sale or refinancing after all liens senior to the judgment lien*, property taxes, and costs and fees necessary to close the sale or refinancing are paid or extinguished. [Emphasis added.]

Based on the Sables' judgment of divorce, they were cotenants with rights of survivorship in the subject property, with Diana Sable having a right to the first $500,000 in net equity obtained from the property following sale. Contrary to plaintiff's contention that the judgment of divorce comprised a mere contractual promise, inferior to its judgment lien, the Michigan Supreme Court in *Estes*, 481 Mich at 579-580, stated: "A court may provide for the distribution of property in a divorce judgment, and when it enters, the judgment has the same effect as a deed or a bill of sale." Specifically, as cited by the *Estes* Court, *id.* at 580 n 11, MCL 552.401 provides:

> The circuit court of this state may include in any decree of divorce or of separate maintenance entered in the circuit court appropriate provisions awarding to a party all or a portion of the property, either real or personal, owned by his or her spouse, as appears to the court to be equitable under all the circumstances of the case, if it appears from the evidence in the case that the party contributed to the acquisition, improvement, or accumulation of the property. The decree, upon becoming final, shall have the same force and effect as a quitclaim deed of the real estate, if any, or a bill of sale of the personal property, if any, given by the party's spouse to the party.

The Supreme Court has discussed, in detail, the characteristics of joint tenancies with rights of survivorship, stating:

> The interest which was conveyed . . . "as joint tenants with full rights of survivorship" was a joint life estate with dual contingent remainders. The contingent remainder of either cotenant may not be destroyed by any act of the other. Thus, we hold that either cotenant may transfer her interest in the joint life estate and such a transfer has no effect on the contingent remainders. Upon the death of either of the original cotenants, the other cotenant, or any person to whom she has transferred her contingent remainder, takes the whole estate. We further hold that the joint life estate may be partitioned without affecting the contingent remainders. [*Albro v Allen*, 434 Mich 271, 287; 454 NW2d 85 (1990).]

Absent a finding of fraud on the part of Diana Sable rendering her interest in the property subject to the judgment lien, jurisdiction and authority existed only to effectuate the lien solely against Richard Sable's joint interest in the property. Given the respective rights of Diana Sable and Richard Sable to the property, Richard Sable's interest was limited and did not entitle plaintiff to payment under the judgment lien following the sale to Watson.

Plaintiff also contends that, despite the sale, its judgment lien survives in accordance with this Court's ruling in *Thomas*, 290 Mich App at 410, citing MCL 600.2813(2) ("Again, this language contemplates the continued attachment of a judgment lien on property despite new ownership when the lien has not been fully discharged."). The ruling in *Thomas* is, however, factually distinguishable. In *Thomas*, 290 Mich App at 404, the judgment debtor was the titled owner of the subject property, with his wife having only a dower interest. Upon the sale of the property, the judgment debtor received monies that he failed to remit in payment of the judgment creditor's lien. *Id*. at 396. In contrast, Richard Sable was a joint tenant with rights of survivorship in the property at issue and had a limited, and ultimately nonexistent, equity interest, resulting in the realization of no monies from the proceeds of the sale. As noted in *Thomas*:

> [W]hen no payment whatsoever has been made to the judgment creditor *from available real estate sale proceeds*, as was the case here, the judgment lien remains attached to the property and is not dischargeable except upon full payment. [*Id*. at 411 (emphasis added).]

Unlike the circumstances in *Thomas*, there were no "available real estate sale proceeds" for use to remit to plaintiff. Based on this distinction, plaintiff's reliance on this Court's ruling in *Thomas* is unavailing.

Plaintiff further asserts entitlement to relief pursuant to the Michigan Uniform Fraudulent Transfer Act (MUFTA), MCL 566.31 *et seq*. Plaintiff asserts that the jury's verdict that Richard Sable had the intent to "hinder, delay, or defraud"[1] plaintiff when effectuating the transfer of the subject property is a determination of a fraudulent transfer and thus actionable, entitling him to any of the remedies afforded by the MUFTA.

We note, as an initial matter, that plaintiff contended in its complaint that the transfer of the property to Watson was fraudulent premised on MCL 566.35(1), which states:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation *without receiving a reasonably equivalent value* in exchange for the transfer or obligation

---

[1] MCL 566.34(1)(a) provides: "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor."

*and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer* or obligation. [Emphasis added.]

There was a failure to prove that Richard Sable was insolvent or became insolvent as a result of the transfer. There was also a failure to demonstrate that Watson did not provide "reasonably equivalent value" for the property. Indeed, there is no dispute that Watson paid $545,000 for the subject property and plaintiff has not demonstrated that the price obtained was somehow unfair or below the market value of the property at the time of the sale.

Significantly, MCL 566.38(1) states, "A transfer or obligation is not voidable under section 4(1)(a) against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee." Based on *In re Agricultural Research and Technology Group, Inc*, 916 F2d 528, 540 (CA 9, 1990) (discussing fraudulent transfers), "value is to be determined in light of the act's purpose, in order to protect the creditors." In the Michigan statutory scheme, the MUFTA does not define the phrase "reasonably equivalent value," other than in the language of MCL 566.33(2), which states:

> For the purposes of sections 4(a)(2) and 5, a person gives a reasonably equivalent value if the person acquires an interest of the debtor in an asset pursuant to a regularly conducted, noncollusive foreclosure sale or execution of a power of sale for the acquisition or disposition of the interest of the debtor upon default under a mortgage, deed of trust, or security agreement.

The phrase "reasonably equivalent value" has its origin in 11 USC 548, part of the federal Bankruptcy Code, 11 USC 548. *Leibowitz v Parkway Bank & Trust Co (In re Image Worldwide, Ltd)*, 139 F3d 574, 577 (CA 7, 1998). The Uniform Fraudulent Transfer Act has been interpreted to require that the value provided in exchange for the transaction be received by and benefit the debtor-transferor, and not some third party or entity. See *Nat'l Westminster Bank NJ v Anders Engineering, Inc*, 289 NJ Super 602, 605-606; 674 A2d 638 (1996).[2] In determining "reasonably equivalent value" courts are to "consider all the facts and circumstances . . . keeping in mind that any significant disparity between the value received and obligation assumed by the debtor-transferor will significantly harm innocent creditors." *In re Mich Machine Tool Control Corp*, 381 BR 657, 669 (ED Mich, 2008) (citation and internal quotation marks omitted). Reasonably equivalent value has also been deemed to be interchangeable with the term "fair consideration." *In re Auto Specialties Mfg Co*, 153 BR 457, 498 (WD Mich, 1993). In *In re Otis & Edwards, PC*, 115 BR 900, 908 (ED Mich, 1990), it was opined:

> The key to understanding the concept of fair consideration is found not in the form of the terms but rather the transactional context in which the issue arises. To this court "fair consideration" equals "reasonably equivalent value." What

---

[2] "[C]ase law from other states, which admittedly is not binding on this Court . . . is highly instructive." *A & E Parking v Detroit Metro Wayne Co Airport Auth*, 271 Mich App 641, 645; 723 NW2d 223 (2006) (citation omitted).

constitutes fair consideration (or reasonably equivalent value), will change from setting to setting.

In the context of bankruptcy, it has been observed:

> [I]f the debtor receives property or discharges or secures an antecedent debt that is substantially equivalent in value to the property given or obligation incurred by him in exchange, then the transaction has not significantly affected his estate and his creditors have no cause to complain. By the same token, however, if the benefit of the transaction to the debtor does not substantially offset its cost to him, then his creditors have suffered, and . . . the transaction was not supported by "fair" consideration. [*Rubin v Manufacturers Hanover Trust Co*, 661 F2d 979, 991 (CA 2, 1981).]

"The touchstone is whether the transaction conferred realizable commercial value on the debtor reasonably equivalent to the realizable commercial value of the assets transferred." *Mellon Bank, NA v Metro Communications, Inc*, 945 F2d 635, 647 (CA 3, 1991). In the circumstances of this case, plaintiff has failed to demonstrate that the amount paid by Watson did not constitute the "reasonably equivalent value" for the property.

In accordance with MCL 566.38(1), for a transfer not to be voidable it must also be demonstrated that the recipient "took in good faith." Plaintiff contends that Watson could not qualify as a bona fide or good faith purchaser because he had notice of the existence of the recorded judgment lien. See *Oakland Hills Dev Corp v Lueders Drainage Dist*, 212 Mich App 284, 297; 537 NW2d 258 (1995). In contrast, Watson contends that the definition of good faith, for purposes of the MUFTA, is more in line with that found in MCL 440.1201(2)(t), which defines "good faith" as "honesty in fact and the observance of reasonable commercial standards of fair dealing." In other words, Watson contends that because he did not conspire or collude to engage in fraud and purchased the property in an arms-length transaction, he qualified as a good faith purchaser.

We conclude that Watson qualified as having purchased the property in "good faith," thereby precluding the voidability of the transfer. A purchaser in good faith, or a bona fide purchaser, is defined as "one who purchases without notice of a defect in the vendor's title." *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 393; 761 NW2d 353 (2008). Notice of a defect depriving a purchaser of good faith may be either actual or constructive, *Richards v Tibaldi*, 272 Mich App 522, 539; 726 NW2d 770 (2006), and has been defined as follows:

> When a person has knowledge of such facts as would lead any honest man, using ordinary caution, to make further inquiries concerning the possible rights of another in real estate, and fails to make them, he is chargeable with notice of what such inquiries and the exercise of ordinary caution would have disclosed. [*Kastle v Clemons*, 330 Mich 28, 31; 46 NW2d 450 (1951).]

Watson had notice based on the recording by plaintiff of its judgment lien. However, according to MCL 600.2801(c) (emphasis added), a judgment lien is "an encumbrance in favor of a

judgment creditor *against a judgment debtor's interest* in real property . . . ." There is no evidence to suggest or cited by plaintiff that Watson did not, through his title company, obtain knowledge of the judgment lien and investigate its effect on rights to the property. Because the judgment lien, by definition, only encompassed Richard Sable's possible equitable interest in the net proceeds obtained from the property, which would be deemed to comprise merely an inchoate expectation and not a cognizable property interest, it did not serve to compromise Watson's bona fide or good faith purchaser status.

Plaintiff also challenges the trial court's dismissal of Watson and Dow Chemical Employees Credit Union (Watson's bank) based on plaintiff's voluntary dismissal of Diana Sable, a necessary party to the litigation. MCR 2.205(A) defines necessary parties as "persons having such interests in the subject matter of an action that their presence in the action is essential to permit the court to render complete relief. . . ." Because plaintiff, in its complaint, sought both an entitlement to the proceeds from the sale of the property and avoidance of the transfer, the trial court did not err in finding that Diana Sable was a necessary party[3] to the litigation and that her absence necessitated the dismissal of Dow and Watson. Plaintiff contends that if the trial court did not err in determining that Diana Sable was a necessary party, it did err in failing to join Diana Sable rather than dismiss the claims. MCR 2.205(B) provides, in part:

> When [necessary parties] have not been made parties and are subject to the jurisdiction of the court, the court shall order them summoned to appear in the action, and may prescribe the time and order of pleading. If jurisdiction over those persons can be acquired only by their consent or voluntary appearance, the

---

[3] As discussed in *Mather Investors*, *LLC v Larson*, 271 Mich App 254, 259-260; 720 NW2d 575 (2006),

> a "debtor" under the [M]UFTA "means a person who is liable on a claim." MCL 566.31(f). A claim need not be reduced to judgment or undisputed. MCL 566.31(c). However, the transferor must actually be liable for the claim to be a "debtor." Indeed, the remainder of the [M]UFTA appears to presume that liability has already been established. A claim under the [M]UFTA cannot proceed otherwise. . . . [T]he transferor here has ostensibly parted with any interest in the assets. However, the transferor, or her estate, has not parted with an interest in an adjudication of liability to another individual. Therefore, unless the transferor's liability has already been determined in a proceeding that afforded the transferor a meaningful opportunity to defend, the transferor's "presence in the action is essential to permit the court to render complete relief . . . ." MCR 2.205(A). [*Id.* at 259-260 (emphasis removed).]

While Richard Sable's liability to plaintiff was determined by the judgment lien, Diana Sable's liability was not similarly established by that document.

court may proceed with the action and grant appropriate relief to persons who are parties to prevent a failure of justice.

However, in this case, the absence of Diana Sable as a necessary party was directly attributable to *plaintiff's voluntary dismissal* of her from the litigation and not a failure to join her as a party.

This leads to the next argument, pertaining to the election of remedies. It is argued that plaintiff's election of a settlement with Diana Sable against the proceeds obtained from the sale precluded its ability to also pursue a judgment against the property. The doctrine of election of remedies comprises a procedural rule that prevents a party from pursuing inconsistent remedies. *Riverview Coop, Inc v First Nat'l Bank & Trust Co of Mich*, 417 Mich 307, 311; 337 NW2d 225 (1983). The doctrine's purpose is to preclude a double recovery for a single injury. *Id.* at 312. The doctrine is dependent upon the establishment of three prerequisites:

(1) at the time of the election, there must have been two or more remedies available; (2) the alternative remedies must be inconsistent rather than consistent and cumulative; and (3) the party must have chosen and pursued one remedy to the exclusion of the other(s). [*Barclae v Zarb*, 300 Mich App 455, 486; 834 NW2d 100 (2013) (citation and internal quotation marks omitted).]

The doctrine serves only to preclude remedies that are "'opposite and irreconcilable. . . . [O]ne remedy must allege as fact what the other denies, or . . . the theory of one must necessarily be repugnant to the other.'" *Prod Finishing Corp v Shields*, 158 Mich App 479, 494; 405 NW2d 171 (1987), quoting 25 Am Jur 2d, Election of Remedies, § 8, pp 653-654. A plaintiff is permitted to pursue different legal remedies, as long as a double recovery is not obtained. See, generally, *Barclae*, 300 Mich App at 486.

We find the election-of-remedies doctrine inapplicable in the circumstances of this case. Settlement with Diana Sable did not preclude plaintiff from continuing to pursue available remedies pertaining to Richard Sable as a judgment debtor. In addition, this Court has previously recognized that a judgment creditor is permitted to pursue both a judgment lien under the MJLA and an execution lien in accordance with Chapter 60 of the Revised Judicature Act, MCL 600.101 *et seq.* See *Thomas*, 290 Mich App at 414-415. "[T]he MJLA provides that '[a] judgment lien is in addition to and separate from any other remedy or interest created by law or contract.' MCL 600.2817. The Legislature did not repeal MCL 600.6018 and, therefore, the MJLA and MCL 600.6018 are two different mechanisms by which a judgment creditor can attempt collection on a judgment by going after real property." *Thomas*, 290 Mich App at 414. The present situation is analogous.

An additional issue was raised pertaining to plaintiff's right to a jury trial in this matter. Plaintiff contends that it was entitled to a jury trial on the issue of fraud, while Richard Sable argues that plaintiff's action was actually equitable in nature, precluding the right to a jury trial. Both parties are correct in certain respects. Equitable claims are to be determined by a trial court and do not implicate the right to a jury trial. *Abner A Wolf, Inc v Walch*, 385 Mich 253, 260-261; 188 NW2d 544 (1971); *ECCO, Ltd v Balimoy Mfg Co, Inc*, 179 Mich App 748, 749; 446 NW2d 546 (1989). However, allegations of fraud comprise a legal claim that affords the right to a jury trial. *Schaffer v Eight-One Hundred Jefferson Avenue East Corp*, 267 Mich 437, 448; 255 NW

324 (1934). A factual issue existed pertaining to Richard Sable's intent to defraud at the time of the conveyance. Because this case involved both a factual issue and a legal claim, plaintiff was entitled to a jury trial. Ultimately, however, this is irrelevant based on this Court's determination regarding the outcome of this case.

As a related matter, plaintiff contends that it was entitled to a special verdict, which would then necessitate the trial court's entry of a judgment or award consistent with the jury's determination. Special verdicts are discussed in MCR 2.515. Although the jury determined that Richard Sable had fraudulent intent, this was the extent of the jury's finding. Specifically, the jury answered in the affirmative the following question:

> When Diana M. Sable and Richard J. Sable sold 5763 Wellwood to Dean Watson and all of the proceeds from the sale were paid to Diana M. Sable, did Richard Sable have the actual intent to hinder, delay or defraud Weatherseal?

Standing alone, this determination did not entitle plaintiff to a judgment because it must be placed in context and other criteria must be analyzed. Further, any inadequacy implied by plaintiff in the special verdict is unavailing because the question posed to the jury was agreed to by plaintiff. "A party is not allowed to assign as error on appeal something which his or her own counsel deemed proper at trial since to do so would permit the party to harbor error as an appellate parachute." See *Marshall Lasser*, *PC v George*, 252 Mich App 104, 109; 651 NW2d 158 (2002) (citation and internal quotation marks omitted).

Plaintiff also contends that its judgment lien had priority over the Sables' unrecorded divorce judgment. Notably, the MJLA does not provide for foreclosure under a judgment lien. MCL 600.2819. Instead, it provides, "[a]t the time the judgment debtor makes a conveyance . . . of, sells under an executory contract, or refinances the interest in real property that is subject to the judgment lien, the judgment debtor shall pay the amount due to the judgment creditor. . . ." *Id*. The MJLA grants a judgment lien priority over liens recorded *after* the judgment lien, with certain exceptions, MCL 600.2807, but is silent with regard to the priority status of a judgment lien over *earlier* unrecorded conveyances. As discussed in 66 Am Jur 2d Records and Recording Laws, § 134:

> In jurisdictions where judgment creditors are not within the protection of the recording laws as against unrecorded instruments, an unrecorded conveyance of a specific parcel of land is entitled to priority over the lien of a subsequent judgment against the vendor even though the judgment creditor had no notice of the conveyance, and if the judgment creditor purchases the land at the sale under the judgment, he or she can acquire no superior title by his or her purchase. However, in jurisdictions where, by statute, judgment creditors are extended protection against unrecorded instruments of which they had no notice at the time their liens became fixed, the liens of subsequent judgments are entitled to priority over prior unrecorded conveyances of which the judgment creditor had no notice. This is the rule irrespective of the defenses that might have been interposed by the judgment debtor prior to the entry of judgment but that are not available after the docketing thereof. [Citations omitted.]

As such, plaintiff's contention of the priority of his judgment lien with regard to the Sables' judgment of divorce is without merit.

To the extent that it is suggested that plaintiff's judgment lien has priority over the Watson mortgage with Dow, this argument is also unavailing. While MCL 600.2807 grants a judgment lien priority over liens recorded *after* the judgment lien, important exceptions are noted within the statutory provision. Specifically, MCL 600.2807(2)(a) provides that a judgment lien lacks priority over a subsequently recorded "purchase money mortgage." Plaintiff's judgment lien, based on the statutory language, cannot be construed to have priority over the mortgage held by Dow with Watson.

Finally, discussion ensued in the lower court based on plaintiff's attempt to pursue a levy of execution on the subject property. *Black's Law Dictionary* (9th ed) defines a levy of execution as "[t]he legally sanctioned seizure and sale of property; the money obtained from such a sale." MCL 600.6018 provides:

> All the real estate of any judgment debtor, including, but not limited to, interests acquired by parties to contracts for the sale of land, whether in possession, reversion or remainder, lands conveyed in fraud of creditors, equities and rights of redemption, leasehold interests including mining licenses, for mining ore or minerals, but not including tenancies at will, and all undivided interests whatever, are subject to execution, levy and sale except as otherwise provided by law.

Plaintiff's contention of entitlement to a levy of execution was premised on fraud, which had not been affirmatively established, for purposes of a levy, other than by way of the jury's verdict that Richard Sable had fraudulent intent against Weatherseal. "Where there is no actual fraud or collusion in a transfer of property or some right in it by the debtor to a third person even though the third person is the debtor's spouse, the actual ownership is in the transferee, and the property or interest is not subject to execution against the transferor." 7 Michigan Pleading & Practice (2d ed), Executions, § 49:21, citing *Loomis v Smith*, 37 Mich 595 (1877). Based on the absence of a determination of such "actual fraud," and given Watson's status as a good faith purchaser, the trial court properly declined to allow a levy of execution on the property.

In Docket No. 314079, Richard Sable contends that the trial court erred in failing to grant him sanctions under MCR 2.403. "A trial court's decision whether to grant case evaluation sanctions presents a question of law, which this Court reviews de novo." *Tevis v Amex Assurance Co*, 283 Mich App 76, 86; 770 NW2d 16 (2009). As discussed by this Court in *Van Elslander v Thomas Sebold & Assoc, Inc*, 297 Mich App 204, 211; 823 NW2d 843 (2012), quoting *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008):

> "A trial court's decision whether to grant case-evaluation sanctions under MCR 2.403(O) presents a question of law, which this Court reviews de novo. We review for an abuse of discretion a trial court's award of attorney fees and costs. An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes."

The interpretation and application of a court rule also presents a question of law that is reviewed de novo. *Snyder v Advantage Health Physicians*, 281 Mich App 493, 500; 760 NW2d 834 (2008).

MCR 2.403(O)(1) states, "If a party has rejected an evaluation and the action proceeds to verdict, that party must pay the opposing party's actual costs unless the verdict is more favorable to the rejecting party than the case evaluation." This Court has noted that MCR 2.403(O)(1) is a mandatory rule that requires the party rejecting a case-evaluation award to pay the opposing party's actual costs under certain circumstances. *Haliw v City of Sterling Hts (On Remand)*, 266 Mich App 444, 447; 702 NW2d 637 (2005). The parties do not dispute that Richard Sable accepted the case-evaluation award of $10,000 in favor of plaintiff.

There are two aspects to this issue. Richard Sable first contends that he is entitled to costs and fees under MCR 2.403(O)(1) based on the absence of any monetary award in favor of plaintiff by the jury, comprising a less favorable result and justifying the award of sanctions. The second point of contention is the applicability of MCR 2.403(O)(5), regarding the valuation of equitable remedies to justify the award of sanctions.

Dealing first with MCR 2.403(O)(1), the difficulty that ensues is the absence of any monetary award by the jury for comparison to determine whether it was "more favorable" than the case-evaluation award. Richard Sable elects to interpret the absence of a monetary award as the equivalent of an award of $0 or a no cause of action. We find that the absence of a monetary award does not negate the value of plaintiff's judgment lien, does not equate to a no cause of action, and does not entitle Richard Sable to sanctions. MCR 2.403(O)(3) defines a verdict as being "more favorable to a defendant if it is more than 10 percent below the evaluation, and . . . more favorable to the plaintiff if it is more than 10 percent above the evaluation." Given the nature of the jury's verdict in this matter, there can be no comparison to the case-evaluation figure of $10,000 and, thus, a determination of favorability is inherently impossible under this provision, rendering an award of sanctions inappropriate.

Subsection (O)(5) is also inapplicable. Plaintiff did not plead an equitable cause of action and, further, the jury verdict did not encompass or provide for an equitable remedy—merely a factual determination. Based on the absence of any monetary or equitable award from the jury, there is no basis for comparison to the case-evaluation award, rendering an award of sanctions inappropriate.

If the trial court implicitly denied sanctions in accordance with the "interest of justice exception" contained in MCR 2.403(O)(11), this would comprise error because MCR 2.403(O)(11) is implicated only when the "'verdict' is the result of a motion . . . ." At any rate, the denial of sanctions is affirmed because "[t]his Court ordinarily affirms a trial court's decision if it reached the right result, even for the wrong reasons." *Wickings v Arctic Enterprises*, *Inc*, 244 Mich App 125, 150; 624 NW2d 197 (2000).

Affirmed.

/s/ Mark T. Boonstra
/s/ Patrick M. Meter
/s/ Deborah A. Servitto